UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID JAMES HEIL JR.,

                        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

Case # 16-CV-6653-FPG

DECISION AND ORDER

      David James Heil ("Heil" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 9. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

      On June 28, 2013, Heil protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 127-33. He alleged disability since March 8, 2013 due to heart disease, high blood pressure, chronic pain, and recent bypass surgery. Tr. 168. Heil later amended his alleged onset date to September 2, 2013. Tr. 38. On April 16, 2015, Heil and a vocational expert ("VE") testified at a hearing via videoconference before Administrative Law Judge Rosanne M. Dummer ("the ALJ"). Tr. 35-67. On April 23, 2015, the ALJ issued a decision finding that

---

[1]     References to "Tr." are to the administrative record in this matter.

1

Heil was not disabled within the meaning of the Act. Tr. 14-29. On August 2, 2016, the Appeals Council denied Heil's request for review. Tr. 1-4. Thereafter, Heil commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ's decision analyzed Heil's claim for benefits under the process described above. At step one, the ALJ found that Heil had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 16. At step two, the ALJ found that Heil has the following severe impairments: coronary artery disease, status-post coronary artery bypass graft with residual neuropathic pain at the incision site, and obesity. Tr. 16-17. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 17.

Next, the ALJ determined that Heil retained the RFC to perform light work[2] with additional limitations. Tr. 17-26. Specifically the ALJ found that Heil can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit, stand, and walk for six hours in an eight-hour workday; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead bilaterally; and must avoid unprotected heights and extreme cold. Tr. 17-18.

At step four, the ALJ relied on the VE's testimony and found that Heil can perform his past relevant work as a salesperson and teacher. Tr. 26-27. The ALJ also made a finding at step five and relied on the VE's testimony to determine that Heil can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 27-28. Specifically, the VE testified that Heil could work as a teaching tutor, retail salesperson,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

retail clerk, storage facility clerk, ticket seller, bench assembler, office helper, and cashier. Tr. 27. Accordingly, the ALJ concluded that Heil was not "disabled" under the Act. Tr. 28-29.

## II. Analysis

Heil argues that remand is required because (1) the RFC determination is not supported by substantial evidence because the ALJ did not perform a function-by-function assessment or afford controlling weight to her treating physician's opinion, and (2) the ALJ's credibility assessment is improper. ECF No. 7-1 at 15-23. These arguments are addressed in turn below.

### A. RFC Assessment

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Id.*

#### 1. Function-by-Function Assessment

Heil asserts that the ALJ's RFC assessment is not supported by substantial evidence because there was no function-by-function assessment of his ability to perform the requirements of light work. ECF No. 7-1 at 15. Specifically, Heil argues that the RFC lacks nonexertional limitations related to his chronic chest pain. *Id.*

"The Act's regulations require that the ALJ include in [her] RFC assessment a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis." *Palascak v. Colvin*, No.

1:11-CV-0592 (MAT), 2014 WL 1920510, at *10 (W.D.N.Y. May 14, 2014) (quotation marks and citation omitted). This means that the ALJ "must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." *Id.* (citations omitted); 20 C.F.R. § 404.1569a(a); S.S.R. 96-8p, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996).

Remand is not required, however, simply because the ALJ failed to conduct an explicit function-by-function analysis. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The ALJ's RFC determination may still be upheld when her analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *Id.* But "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 177-78 (citation omitted).

Here, the ALJ's RFC analysis contains a detailed discussion of the objective evidence and medical opinions of record. Tr. 18-26. The ALJ specifically conducted a function-by-function assessment when she discussed each of Heil's impairments and explained how the RFC limitations adequately accommodate them. Tr. 26. The ALJ noted that with respect to Heil's heart condition, obesity, and other nonsevere impairments, Heil is limited to a range of light work that involves lifting and carrying 20 pounds occasionally and 10 pounds frequently. *Id.* She explained that Heil's reported foot complaints were treated conservatively, which demonstrated that Heil could stand and walk for six hours in an eight-hour workday. *Id.* The ALJ also noted that Heil was generally encouraged to increase his activity level and avoid bed rest, and therefore concluded that his severe and nonsevere impairments would not preclude occasional postural movements. *Id.* (citing Tr. 337). The ALJ explained that Heil's foot pain and obesity require him to avoid

unprotected heights but allow him to occasionally climb, balance, stoop, crouch, and crawl. *Id.* Finally, the ALJ indicated that Heil's pain requires him to avoid extreme cold and only occasionally reach overhead, because Heil indicated that these activities exacerbated his chest pain. *Id.* In fact, a treatment note from Roger Ng, M.D. specifically notes that Heil's chest pain increases with cold weather and raising his shoulders. Tr. 523.

Although Heil asserts that the RFC assessment fails to account for his chronic chest pain, the ALJ clearly considered this impairment and specifically precluded Heil from heavy lifting, extreme cold exposure, or reaching overhead more than occasionally. *Id.* Moreover, the ALJ's summary of the treatment notes and medical opinions makes over a dozen references to Heil's chest pain. Tr. 18-26.

The medical opinions of record also support the ALJ's RFC assessment. For example, the RFC assessment limits Heil to lifting and carrying 20 pounds occasionally and 10 pounds frequently. Tr. 17. This is consistent with consultative examiner Harbinder Toor, M.D.'s opinion that Heil was moderately limited in lifting. Tr. 350; *see Gurney v. Colvin*, 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) ("[M]oderate limitations . . . are frequently found to be consistent with an RFC for a full range of light work.") (collecting cases). It is also consistent with Bryan Henry, M.D.'s statement that "[t]here are certainly no cardiac restriction[s] that need to be placed on [Heil] for employment. Lifting restrictions would be reasonable but should not prohibit administrative desk work." Tr. 276.

The RFC assessment also limits Heil to sitting and walking for six hours in an eight-hour workday. Tr. 17. This is consistent with Donovan Holder, M.D.'s opinion that Heil could sit up to six hours per day and Dr. Toor's opinion that he was only moderately limited in his ability to walk. Tr. 350, 375.

7

Accordingly, for the reasons stated, the Court finds that the RFC assessment is supported by substantial evidence. The ALJ conducted a function-by-function assessment of Heil's ability to perform the requirements of light work, adequately considered his chest pain, and applied the proper legal standards in making her determination.

### 2. Treating Physician Rule

Heil also argues that the ALJ should have afforded "significant weight" to the opinion of his treating physician Dr. Holder. ECF No. 7-1 at 16-18. The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a

8

whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. § 404.1527(c)(1)-(6).

Heil asserts that "the ALJ erred as a matter of law by not giving Dr. Holder's opinions significant weight." ECF No. 7-1 at 16. Aside from this conclusory statement, however, Heil does not explain why Dr. Holder's opinions were entitled to significant weight or how the ALJ failed to provide "good reasons" for discounting those opinions. *Id.* at 16-18.

The ALJ's decision summarized Dr. Holder's opinions and afforded them "limited weight" because she found that they were "generally inconsistent with the objective findings of record" and because "Dr. Holder's own physical examination indicated normal motor and sensation." Tr. 25 (citing Tr. 379, 521). Pursuant to Social Security regulations, these are legitimate reasons for the ALJ to discount Dr. Holder's opinions. *See* 20 C.F.R. §§ 404.1527(c)(3) (the SSA will afford more weight to a medical opinion that is supported by relevant evidence and is well-explained), 404.1527(c)(4) (the SSA will afford more weight to a medical opinion that is consistent with the record as a whole). Accordingly, the Court finds that the ALJ did not violate the treating physician rule and that she provided the requisite "good reasons" for discounting Dr. Holder's opinions.

### B. Credibility

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The ALJ's credibility findings "must be set forth with sufficient specificity to permit

intelligible plenary review of the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 403 (W.D.N.Y. 2014) (quotation marks and citation omitted).

"[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Jackson*, 2009 WL 3764221, at *7 (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (quoting *Caroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

The ALJ must consider all of the claimant's statements about his symptoms and how those symptoms affect his daily activities and ability to work. 20 C.F.R. § 404.1529. However, the claimant's statements about his symptoms will not alone establish that he is disabled. *Id.* Thus, the ALJ must follow a two-step process when considering the claimant's alleged symptoms and their effect on his ability to work. The ALJ must first consider whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. § 404.1529(a). If such an impairment is shown, the ALJ must evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit his work capacity. 20 C.F.R. § 404.1529(c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve

symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

Here, the ALJ found that Heil's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." Tr. 22. The ALJ noted that she "carefully considered [Heil]'s subjective reports of pain" and concluded that Heil's "alleged frequency and severity of symptoms is not corroborated by objective findings or the overall record to the extent alleged." Tr. 23-24. The ALJ also indicated that she "carefully considered the overall record evidence regarding any mental health condition, which may exacerbate pain complaints, though no clinicians note [that Heil] has a mental health impairment." Tr. 24.

Heil asserts that the ALJ's decision is "basically void" of any meaningful credibility discussion. ECF No. 7-1 at 21. Specifically, Heil argues that "nowhere in the ALJ's unfavorable decision or in the administrative record does it indicate that the ALJ considered [Heil]'s consistent work record in finding that [his] testimony was not credible." *Id.* The ALJ's decision, however, specifically acknowledges that Heil "is a highly skilled individual with a good work history" and that he "is more active, to his credit, than he admits." Tr. 24. The ALJ further explained that Heil "was doing well after a March 2013 cardiac procedure and returned to work through September 2013." *Id.* She also noted that "evidence in 2014 indicated that [Heil] started other work" and that in December 2014 he "was working part-time at his sister's apparel store." *Id.*

Thus, despite Heil's contrary assertions, the ALJ clearly considered his work history in the credibility analysis. Moreover, although "a good work history may be deemed probative of credibility, . . . it bears emphasizing that work history is just one of many factors that the ALJ is

instructed to consider in weighing the credibility of claimant testimony." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).

Heil also faults the ALJ for considering that he smoked, because it is clear from the record that he is a non-smoker. ECF No. 7-1 at 22. The ALJ noted that Heil "was to stop smoking and was encouraged to increase his physical activity." Tr. 26 (citing Tr. 337, 437, 462, 497). The records that the ALJ cites, however, indicate that Heil is a non-smoker. This is the sole reference to smoking in the entire decision and the ALJ does not use smoking as a reason to discount Heil's credibility. Tr. 26. The ALJ made this statement as she summarized a set of treatment notes, and it seems that she merely miswrote that Heil was to stop smoking because the related records demonstrate that Heil is a non-smoker.

The ALJ also considered Heil's medication and conservative treatment history. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv) (ALJ is entitled to consider the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms), 404.1529(c)(3)(v) (ALJ is entitled to consider treatment received to relieve pain or other symptoms). The ALJ pointed out that Heil's coronary artery disease, hypertension, and hyperlipidemia were "treated conservatively with medications and there is no evidence of overt concern." Tr. 23 (citing Tr. 276). She noted that "[n]o more than conservative treatment was recommended for pain" and pointed out that he was "prescribed Dilaudid one time to be used 'as needed' . . . [and] was treated conservatively with medication, Lidoderm patches, and physical therapy." *Id.* (citing Tr. 338, 353-65, 425). The ALJ also acknowledged that it was "generally recommended" that Heil "exercise, increase core strength, lose weight, increase activity, and avoid bed rest" and that he was "to try spandex or ace bandage wraps for chest discomfort." *Id.* (citing Tr. 337, 437, 485).

Accordingly, for the reasons stated, the Court finds that the ALJ did not err and that her credibility assessment is thorough and is supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 13, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court